**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ARKADI KARAPETIAN,

Petitioner,

v. Case No. 1:26-cv-01703 KWR-LF

TODD BLANCHE, *Attorney General of the United States,*
MARKWAYNE MULLIN*, Secretary of the Department of Homeland Security,* ACTING DIRECTOR,
*Immigration and Customs Enforcement,*
MARY DE ANDA-YBARRA, *El Paso Field Office Director,*
*Enforcement and Removal Operations,*
*Immigrations and Customs Enforcement, and*
WARDEN, *Torrance County Detention Center*,

Respondents.

**ORDER GRANTING IN PART HABEAS PETITION**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Petitioner is subject to a final order of removal and has been in detention pending his removal from the country under 8 U.S.C. § 1231. Petitioner asserts there is not a significant likelihood of his removal in the reasonably foreseeable future, and he should be released under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner also asserts his procedural due process rights were violated as he was detained without Respondents revoking his order of supervision or following the appropriate procedures.

The Court concludes that Petitioner is entitled to release at this time as his procedural due process rights were violated. Therefore, having reviewed the parties' pleadings, briefing, and the

relevant law, the Court finds that the Petition is well-taken in part and therefore is **GRANTED IN PART.** Respondents shall release Petitioner.

**BACKGROUND**

Petitioner is a citizen of Georgia. He is in ICE detention at the Torrance County Detention Center in New Mexico. It appears he was detained by ICE in November 2025. Petitioner entered the United States on a B-2 nonimmigrant visa on February 3, 1998. Pet. ¶ 39, Doc. 2. He was authorized to remain through August 2, 1998 and he overstayed his visa. *Id.* He has lived in the United States for approximately twenty-eight years. *Id*. ¶ 40. On July 8, 2002 an order of removal was issued. *Id.* ¶ 43. The order became final on August 7, 2002. *Id.* ¶ 44.

Petitioner was arrested by ICE in 2005. After approximately 90 days of detention, he was released on an Order of Supervision. Pet. ¶ 48. Petitioner complied with all conditions of supervision between 2005 and November 2025. Pet. ¶ 51. Petitioner asserts he appeared at every check-in, he maintained his address, remained employed, never fled or absconded, and never missed an appearance. Pet. ¶ 51. However, Respondents assert that Petitioner failed to appear for several check-ins over twenty years. *See* Doc. 8-1. But he appeared at subsequent check-ins or appointments, and his order of supervision was never revoked on this basis. *Id*.

Petitioner was detained on November 21, 2025 without prior warning, without written notice, without stating any reason, and without conducting any interview. Pet. ¶ 52.

Petitioner asserts that Respondents took him into custody without revoking his order of supervision in writing, without notice, without providing written reasons, without conducting the required informal interview, and without authorization from the official empowered to revoke supervised release. Pet. ¶ 35. Respondents do not contest Petitioner's assertion that no notice of revocation was issued. Therefore, the Court assumes that his supervision was never revoked.

On December 9, 2025, Petitioner filed a motion to reopen his removal proceedings in immigration court. Pet. ¶ 55. An immigration judge denied the motion. *Id.* ¶ 56. Petitioner appealed to the BIA, and the BIA denied the appeal on March 31, 2026. Petitioner filed a petition for review with the Court of Appeals for the Seventh Circuit. Pet. ¶ 59. On May 7, 2026, the Seventh Circuit stayed his removal "pending resolution of the proceedings in this court, including the resolution of any petition for rehearing." Doc. 11-1 at 1. It appears his removal remains stayed.

## LEGAL STANDARD

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## DISCUSSION

Petitioner asserts that his removal from the country is not significantly likely in the reasonably foreseeable future in violation of *Zadvydas*. He also argues that his detention without the proper revocation of his order of supervision violates procedural due process. The Court agrees that his procedural due process rights were violated when he was detained without the revocation of his order of supervision. Notably, Respondent's do not address this argument, and do not assert that his order of supervision was properly revoked (or revoked at all). Therefore, the Court assumes it was not revoked.

**I. <u>Administrative exhaustion was not required for his procedural due process claim</u>.**

Initially, Respondents assert that Petitioner failed to exhaust his administrative remedies. But Respondents do not point to any administrative procedures Petitioner could exhaust on this issue.

The Immigration and Nationality Act ("INA") and § 2241 do not expressly require administrative exhaustion for immigration detainees that challenge their detention. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). But, for criminal detainees, the Tenth Circuit requires administrative exhaustion for § 2241 habeas petitions. *Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010). A "narrow exception to the exhaustion requirement" exists when "a petitioner can demonstrate that exhaustion is futile." *Id.*

"Challenges to immigration detention are properly brought directly through habeas. And the exhaustion deficiencies we have noted in other respects do not affect habeas jurisdiction over such claims." *Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004) (internal citation omitted). Thus, in *Soberanes* the Tenth Circuit did not require administrative exhaustion for a habeas claim seeking release from immigration custody. *Id.*

Here, as in *Soberanes,* administrative exhaustion is not required as he seeks release from immigration custody. It is unclear how exhausting his administrative remedies would address the due process violation in this case. Petitioner asserts that his due process rights were violated when he was detained without appropriate notice or process. Respondents do not allege that this due process violation could be cured through any administrative process.

**II. <u>Respondents violated Petitioner's due process rights by detaining him without revoking his conditions of release or by failing to follow regulations when detaining him</u>.**

Petitioner asserts that his procedural due process rights were violated when he was taken into custody without Respondents following the procedures set forth in 8 C.F.R. § 241.4(*l*) and § 241.13(i)), such as revoking his Order of Supervision, providing him notice, or providing him an informal interview. The Court agrees.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore v. Kim*, 538 U.S. 510, 522 (2003) ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.' ") (quoting *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009)).

**A. Petitioner had a liberty interest in the procedures set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i), and he was not provided process under those regulations.**

Petitioner has a liberty interest in the procedures set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i). As explained below, Respondents violated these regulations by failing to show they revoked his Order of Supervision, failing to consider whether removal was significantly likely in the reasonably foreseeable future, and failing to provide notice or an informal interview as provided under those provisions.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen who is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Petitioner is at least entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218. The process set forth under 8 C.F.R. § 241.4(*l*) and § 241.13(i) provides the procedure for the detention of a person on release under § 1231(a)(3) or (a)(6).

Here, Petitioner entered the United States on a visa in 1998 and has lived in the United States for decades. Petitioner was on release under an Order of Supervision pursuant to § 1231(a)(3) or (a)(6). Under § 1231(a)(3), "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). As here, certain noncitizens may be detained beyond the removal period or released under the terms of supervision under § 1231(a)(3). *See* §

1231(a)(6). Here, after Respondents were unable to remove Petitioner, he was released and placed on an Order of Supervision for twenty years.

As relevant here, supervised release under § 1231(a)(3) or (a)(6) may be revoked as follows. *See* 8 C.F.R. § 241.4(*l*)(1), (2). First, for certain noncitizens, revocation of release may be ordered if the noncitizen "violates the conditions of release." *Id.* § 241.4(*l*)(1). Second, "[r]elease may be revoked in the exercise of discretion" by certain DHS officials when, "in the opinion of the revoking official," one of four enumerated factors is applicable. *Id.* § 241.4(*l*)(2).

Section 241.4(*l*)(3) outlines a "normal review process" that begins "with notification to the alien of a records review and scheduling of an interview," as well as a "custody review" that "include[s] a final evaluation of any contested facts relevant to the revocation and determination whether the facts as determined warrant revocation and further denial of release." *Id*. § 241.4(*l*)(3). The notification therefore explains why his release is being revoked, and the interview and custody review constitutes an opportunity to challenge that decision.

Moreover, 8 C.F.R. § 241.13(i) governs the revocation of conditions of release for a person who was subject to a final order of removal and placed on release after expiration of the removal period. First, a noncitizen may be returned to custody if they violated any condition of release. § 241.13(i)(1). Respondents do not assert that Petitioner violated any condition of release. Next, Respondents may revoke a noncitizen's release if "on account of changed circumstances, the Service determines there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). Respondents do not point to any changed circumstances under § 241.13(i)(2).

Section 241.13(i)(3) provides the procedures for revocation of conditions of release. It provides that upon revocation the noncitizen will be notified of the reasons for revocation. It also

provides that Respondents will conduct an informal interview promptly after the noncitizen's return to custody, allowing the noncitizen to submit evidence to show that there is no significant likelihood he will be removed in the reasonably foreseeable future. *Id.* Respondents will then determine whether the facts warrant revocation and further denial of release. *Id.*

In sum, "ICE's decision to re-detain a noncitizen…who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (*citing* 8 C.F.R. § 241.13(i)(2)). Respondents must make a contemporaneous determination. *Id.*

Here, the record before the Court does not suggest that any of these procedures were followed. Respondents do not assert that the Order of Supervision was ever revoked. Petitioner asserted that he was detained without Respondents revoking his Order of Supervision or providing him notice or an explanation. Respondents do not dispute this factual assertion and do not argue or present any evidence that the Order of Supervision was revoked at all. Respondents did not provide any documentation setting forth the reason for any revocation. Nothing in the record suggests that Petitioner ever received notice under § 241.4(*l*) or § 241.13(i), or an informal interview. Moreover, nothing in the record suggests that any procedure under § 241.4(*l*)(3) or § 241.13(i)(3) was followed. For example, no records were provided suggesting that a custody review occurred as set forth under § 241.4(*l*)(3) or § 241.13(i)(3). Therefore, based on the record before the Court, the Court is unable to conclude that Petitioner received the process under § 241.4(*l*) or § 241.13(i).

Petitioner asserts that some of these procedures must occur before detention. The Court need not decide whether Respondents were required to follow these procedures before Petitioner

was detained, as Respondents do not argue or provide evidence that these procedures were followed at all, either before or after detention.

Petitioner is entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218; *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). While the regulations grant Respondents significant discretion, Petitioner has a liberty interest in Respondents properly revoking his Order of Supervision.

Thus, the Court concludes that after being released under § 1231(a)(3) or (a)(6), Petitioner had a liberty interest in the procedures under § 241.4(*l*) and § 241.13(i), which set forth the procedures Respondents were required to follow in re-detaining him. Petitioner asserted in his Petition that Respondents did not follow those procedures, and Respondents failed to present evidence that they followed those procedures. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned."). Moreover, having lived in the United States for approximately twenty-eight years, he has a liberty interest in being free from detention.

**B. Considering the *Mathews* factors, the failure to follow the regulations under § 241.4(*l*) and § 241.13(i) violated Petitioner's due process rights.**

Having established that Petitioner has a protected interest in Respondents following the regulations authorized by Congress, the Court will consider what process is due. In determining

what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*First*, Petitioner's interest in being free from detention is very strong. *See Hamdi*, 542 U.S. at 529 (finding that freedom from detention is "the most elemental of liberty interests"). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Petitioner's interest in receiving the procedural protections authorized by Congress is also at stake. *See Sierra*, 258 F.3d at 1218. Petitioner was released under an Order of Supervision under § 1231(a)(3) or (a)(6). He has lived in the United States under the Order of Supervision for approximately twenty years. 8 C.F.R. § 241.4(*l*) and § 241.13(i) provide the procedure for revoking and detaining a person under an Order of Supervision. Respondents have not provided any evidence to suggest that his Order of Supervision was revoked, the reasons for that revocation, whether Petitioner received notice of those grounds for revocation, and whether a review under § 241.4(*l*)(3) or § 241.13(i) occurred. Moreover, under these regulations, Respondents were required to evaluate whether removal was significantly likely in the reasonably foreseeable future such that he should be detained. Even balanced against the "broad power over naturalization and immigration" possessed by Congress that justifies "rules that would be unacceptable if applied to

citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), Petitioner possesses two interests that tip the scale in his favor. Thus, the Court finds that the first *Mathews* factor heavily favors Petitioner.

*Second*, the risk of erroneous deprivation by failing to follow the procedure under § 241.4(*l*) or § 241.13(i) is high. Petitioner was previously detained to effectuate his removal from the country and eventually released under § 1231(a)(3) or (a)(6). Petitioner was taken into custody without any process under § 241.4(*l*) or § 241.13(i). Petitioner asserts that he spent twenty-years on the Order of Supervision and never violated a condition of supervision. He asserts he attended every check-in and appointment and maintained employment. Respondents assert that he failed to appear for some check-ins over the years, but his supervision was never revoked on this basis, and he appeared at subsequent appointments. Had Respondents followed the procedure set forth under the regulations, Respondents would have considered whether his detention was necessary to effectuate his removal or whether his removal was significantly likely in the reasonably foreseeable future. It appears there was a significant erroneous deprivation of his rights.

*Third*, the Government's interest in not providing process under its own regulations is slight to nonexistent. To be sure, when considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

However, the regulations at issue provide the process for taking a person into custody after they have been released under § 1231(a)(3) or (a)(6). The Court finds that Respondents have little to no interest in not following the procedure set forth in their own regulations. Respondents have not argued there are any undue fiscal or administrative burdens in following their own regulations.

Balancing the *Mathews* factors, the Court concludes that the process due to Petitioner was the process set forth in the regulations, and that the failure to provide that process violated his due process rights. Moreover, considering the *Mathews* factors, the Court concludes that release is the appropriate remedy.

The Court's conclusion is consistent with the conclusions of other district courts, which have "found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025) (internal quotation marks omitted); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025); *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *7 (W.D. Okla. Jan. 15, 2026).

## CONCLUSION

As explained above, the Court concludes that Petitioner is entitled to release as Respondents violated his procedural due process rights. This release order should not be construed as prohibiting his detention in the future under changed circumstances, such as if his order of supervision is properly revoked and the stay of removal is lifted.

**IT IS THEREFORE ORDERED** that Petitioners' Petition (Doc. 2) is hereby **GRANTED in part** for the reasons described in this Order.

____________/S/____________________
KEA W. RIGGS

UNITED STATES DISTRICT JUDGE